Case number 24-6060 Elizabeth Niblock et al. versus University of Kentucky et al. Oral argument not to exceed 15 minutes per side. Laurie Bullock for the appellant you may proceed. Good morning. Good morning. May it please the court. My which is the class of women seeking to add sports at the University of Kentucky. The district court misunderstood and misapplied the law when it found that plaintiffs did not prove that the University of Kentucky failed to fully and effectively accommodate the interests of its female students in athletics. Your honors in 2023 alone in the academic year that ended a month and a half prior to trial. The University of Kentucky had 244 women seriously interested in participating in equestrian. 30 form of whom had. Get into that part of the case and I know that was the part that the district court ruled on. Just talk through a little bit the arguments Kentucky's made about the dubiousness of this guidance and you know that just seems like such an old era and I'll just be straight with you. Blows me away that we have had all these decades a rule slash guidance which seems to contradict. I mean the irony is it's a safe harbor which contradicts a safe harbor in the statute and it's just so strange to have the statute which looks like an intentional discrimination statute given its history and it has a carve out you know no proportionality rule or no affirmative action rule whatever you want to call that and then a safe harbor which is a proportionality safe harbor. I mean I have to just say it's just so striking to me and you know whether you want to focus on Kaiser, Loper Bright or just how administrative law in 2025 is just not remotely like it was in 1979. What do we do with this? Your honor the arguments that University of Kentucky is making that the policy interpretation is not do any deference or establishes a quota is not a new one. It's just invalid. Yeah and but it's not a new argument your honor it's been made since the 1990s. Schools have been attempting to invalidate. Have we post Kaiser blessed the 1979 guidance? This court although it was not explicitly at issue in the case did use and apply the 1979 guidance in the appeal of Ballot versus Michigan State University and that was a post Kaiser. Ballot both parties conceded the validity of the guidance right so it didn't really I want to consider it precedential binding on us on the effect of Kaiser. No again it was not directly at issue but this court did apply the three-part test. What would be wrong with asking this U.S. Solicitor General for their views about the guidance? So we we do that periodically at this court it's done all the time at the U.S. Supreme Court but we do it periodically at this court because why wouldn't we figure out whether they stand by it and if they do why and figure out what's going on? Your honor the need it obviously the court can ask the Solicitor General for guidance if it so chooses but the need to do that is really not present in this case. This case and this guidance has been applied since 1979. It was adopted originally as a way for schools essentially as an out for schools because the schools were coming to the Department of Education and asking how how are we going to demonstrate compliance what is required of us and rather than just coming up with one way that the school has to explicitly comply. A bright line rule that contradicts the bright line exception in the statute. I don't even understand how this survive let's just put interpretive guidance to let's call these three safe harbors notice and comment rule making the best you can do. I don't understand how even that would work unless I'm just not understanding particularly the first one. Maybe I'm not understanding it but it just looks like a proportionality rule which contradicts a textual point that says this is not a proportionality requirement. That's because your honor for the first prong it doesn't stop at what is the proportionality is it equal are they proportionate it moves on to a discussion of is there a viable team that would fit in whatever that participation you're going to the second and third no no within the first prong the the question is actually is there a participation gap large enough to sustain a viable team so if there's not exact proportionality or as the as title nine uses substantial proportionate proportionality even within prong one. All right so prong one is whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their enrollments that has nothing to do with entrance talent it's just pure compare numbers of men and women numbers of men and women in varsity sports that's am I missing it no your honor that you are incorrect and as this court found in ballot actually the question at issue in ballot I know because I was the appellant attorney there was what is substantial proportionality how do we is defined as a gap that is large enough to sustain a viable team for which you need to ask is there interest and ability among the the underrepresented gender here women to to have a team that fits into that gap so it is not merely we don't end our discussion at purely what are the the school can satisfy prong two or prong three it it has further discussion curiosity perfectly proportionate would satisfy the first second second rule in other words substantially lowers it a little bit but perfectly proportionate would satisfy it if that were the prong that the I know it doesn't say that I'm just saying I'm I'm I'm an athletic director I'm like I hate litigation I hate hiring lawyers am I not right lawyer x that if I am perfectly proportionate I will not get sued for violating this guidance if if an athletic department were perfectly proportionate and it shows that as its means of compliance then it would likely avoid liability and what if it intentionally what if an athletic director said we're not perfectly proportionate but we do have this men's sports team that has no female equivalent and if we just got rid of that men's sports team we would satisfy prong run so they intentionally got rid of a men's sports team in order to satisfy prong one do you think that that itself would violate title nine because you've intentionally discriminated against men in order to achieve substantial proportionality no your honor and that question was actually already posed and addressed in the fourth circuit in the equities in the community for equity decision out of the fourth circuit I mean doesn't so what is that how does that work with title nine does that mean that title nine is not an intentional discrimination on the basis of sex statute it is but it's really important for this court to remember that that intentional decision is not the intent to discriminate it's an intentional decision that starts well before that it's an intentional decision to sponsor segregated by sex athletic department it is one of the last vestiges of segregation that we allow in this country so the the first decision was to segregate their athletic department into men's and women's sports once that decision is made every decision that stems from that has to be intentionally for men or intentionally for women because we're always dealing with so I was curious about that on the record because Kentucky does have some suggestions in their brief that women could actually try out for teams for which there's no equivalent is that is that accurate so could a woman if a woman wanted to play say football could a woman actually try out for football and it's just as a practical matter no women do so or is it is does Kentucky have like a legal prohibition somewhere that says this is only for men I'm not aware of a legal prohibition football for example though is a contact sport which under the regulations there's not an obligation as the regulations say you don't have to give them an opportunity to try out I was just if the record conveyed what Kentucky did for these for for men's sports though sorry your honor the record is absent either way as to whether or not because it wouldn't necessarily be intentional discrimination if you just decide to have a team and it just it would be a disparate impact case it would be like Feeney in the equal protection context that just as a practical matter men are the only folks who participate that's not necessarily intentional discrimination unless you actually have what I'll call de jure discrimination which is a legal prohibition respectfully honor no because merely allowing women to try out for what would otherwise be a men's team it is still a sex segregated athletic department it is still women's sports men's sports that and every jury every court around the country including this court has recognized that the intentional discrimination is not the intent to specifically treat women worse or to not offer women athletic opportunities it's that we have a sex segregated athletic department so to to borrow from a example used in University of Kentucky's briefing they talk about if they were to cut a nursing program and it just happens to affect the students you know female students more than men students but that that's not quite the right analogy what a better analogy would be the University of Kentucky decides it's going to offer a math major for women and a math major for and then it's going to offer three classes for the men's math major and only one for the women's math major the first decision to segregate was the intentional so in fact but so is your view then that there should just be no segregated sports and it should just be it should just be whoever is the best competitively and tries out and makes the team that strikes me as not particularly good for women absolutely not that is not my position then you're okay with sex segregation right so you're it's i suppose it's you're you think that sex segregated sports comports with title nine it does comport with title nine it offers women an opportunity to participate engage and better themselves in sports at all levels not just in college so yes you mean plaintiffs are not advocating for the cessation of sex segregated sports it's just that the athletic department and the courts then recognize in the athletic department needs to recognize that in having that that initial sex segregation that they need to think about every decision from that point on in terms of if we're doing something for the men we need to be as well and can i ask one final question this is just a standard of review question so so the court found prong three of the policy statement not satisfied or excuse me prong three satisfied uh that the inter uh accommodating the interests and abilities of the members is that in your view um a fact finding that we would subject to clear error review or is it no uh whether or not anonymous surveys count as a matter or an anonymous expressed interest and ability count as demonstrating interest and ability under prong three is a legal question so even if we didn't have you know the experts even if we didn't have the survey results that we do which clearly express interest and ability through women who've been you know either express it through objective or through the being recruited for a division one team elsewhere the legal question is still does that does anonymous fact information rise to the level of demonstrating interest and ability such that you think our review is de novo then on that issue yes but if we didn't have a debate about the use of anonymous surveys the ultimate decision by the district court about whether there was interest in ability that would be fact wouldn't it you're you're calling a legal question for example how to handle the survey i would agree with you how to handle the survey is a legal question but once if we're all in agreement about how to handle the survey wouldn't you say interest and ability is a fact question once we have that threshold and as the court recognized for prong two that that threshold was met for interest and ability then yes whether or not the survey results themselves demonstrated that would be a fact question but we never got there because the court stopped the analysis the district court although she got everything else correct stopped the analysis at as a matter of law that doesn't rise to the level of of demonstrating unmet interest we've preoccupied you so much with the other stuff i mean why don't we just talk a little more about this um you know there's a lot of i mean interest and ability we're now accepting the guidance right we wouldn't be doing this if we weren't accepting the guidance so we're assuming this is the way to figure out whether the safe harbor is met and you know it does seem to me pretty strange to think that an anonymous survey where people are simply just showing i mean just let's just say the anonymous survey said interest and yes i would participate and yes i think i'm a good enough equestrian rider lacrosse player to play varsity lacrosse at university of kentucky it's very strange to say that does it why wouldn't you ask questions like have you were you recruited by d1 schools um what's your objective proof that um you know you were you know all state in lacrosse and wherever ohio to me it just seems incredibly obvious you have to ask all those things and it's pretty strange not to give your name i mean that seems really dangerous actually because how do you know these aren't just a bunch of folks that were asked to fill out the survey this way but were horrified with the possibility they'd have to show up on a lacrosse field and have the ball hit them in the head because they had no idea how to use a lacrosse stick so it seems pretty damning not to identify yourself so two two answers to that question uh judge sutton chief judge sutton one we do have the facts that the women were recruited by a division one were nationally ranked were able to a few people do you have enough for each team on just that that metric i i didn't think so based on whether or not they were recruited to a division one team or could perform the tasks that university of kentucky had identified as objective criteria to be able to play the sport yes we do have enough women as we demonstrated and as we noted in the brief the equestrian team that won the national championship in hunt seat for all of the division one programs last year had 15 members in 2022 23 there were 34 women on campus already that had been recruited to another division one program that's all that's more than double the size of the national championship team that out of delaware so we absolutely do enough women to field teams based solely on those objective criteria demonstrating ability in terms of why they wouldn't leave their names first the university of kentucky chose to make this the survey anonymous that was a decision of the athletic department and also it's important to remember that nothing about the survey indicated that if you do not leave your contact information we will assume that you are not interested and do not have the ability nowhere did to disclose that it's your burden on the evidence so we'll call the survey flawed you've got the names of the club people this isn't some mystery why why isn't it appropriate to say go gather the evidence get affidavits you know whatever i'm i mean i'm just trying to figure out why that isn't a response to this point so from a practical standpoint that would be almost impossible to of a burden to place on plaintiffs plaintiffs filed you said they were national champions pretty identifiable group plaintiffs filed the section in 2018 we didn't make it to trial until 2023 matriculation being what it is through college to place that burden on the plaintiffs we could have walked in on day one of trial of day one of filing with the names of fully teams that may or may not ever exist and all of those women could have graduated by the time we made it to trial so it's just a very impractical and impossible burden to place on the student athletes themselves either at colleges or at the high school or middle school level who are seeking to add a team but moreover your honor it conflates which we pointed out in our briefing the liability question with the remedy question there is no requirement that after we have demonstrated that kentucky violated title 9 by failing to fully and effectively accommodate its female students which is a high and exacting standard that the university has to meet that they actually have to add a team they can create a compliance plan that never adds any of those teams that they could decide to add a women's wrestling team if they felt that there was interest and ability for that so is your argument about compliance here like to take chief judge sutton's point that like you know we don't know the roster exactly whether it's 15 whether it's 40 we don't have those names the team's not going to stand up tomorrow presumably you know you need to get horses you know the whole nine yards right like is what you're arguing that the university now seeing that there was you know significant expressed interest seeing that you know maybe there's self-reported a lot of ability on campus and things like that just start to take more steps to investigate or is your argument that like no they have to add a team now whether it's wrestling or equestrian or western or hunt or whatever it is our argument is that plaintiffs have met their burden to prove by a preponderance of the evidence that the university of kentucky is not fully and effectively accommodating the interest of its students of the survey not just the survey no your honor we also had testimony that these clubs have been in existence for decades that there were multiple requests from women over a period of five or six years to elevate these sports to varsity status so the survey in and of itself very clearly demonstrates unmet interest and ability but it's not the only piece of evidence that plaintiffs put forward that there is unmet interest and ability so but we have met our burden to show the school is not meeting the standard that title nine placed on it it is violating title nine and we are asking for injunctive relief to get into confirmation the school is like well we don't have a contact info or we're not really sure that we have enough to make a team but you know listen we see this interest and ability as as you're arguing from the survey and i and i point out there's there's some you know other really bad facts on the record too about coach testimony and and so forth but let's say we're going to like hold an open try out or we're going to like have an informational meeting and like five people show up right do they still have to now create a team we would argue yes your honor because the the other thing that it's important for the court to remember is that there there are no men's teams that are comprised of individuals who are currently on campus the athletic director testified that but isn't that like a flaw in this test generally i mean that you know you have a d1 school i mean i could be wrong but i don't i don't know that you have like you know a ton of people who are all americans in high school who want to play d1 who can play d1 who are just chilling on campus not playing d1 or not even in the club right and it seems like at least from the testimony here that you don't have a lot of d d1 athletes in the in the club teams or of ability so there there seems to be you know a mismatch generally with the with the test and the test that you advocate for on that point right i mean if you had a d1 team of wrestling right presumably kentucky would recruit for it and people who might not otherwise come to kentucky would come for it right but you acknowledge that the test is about who's on campus right now the test is about accommodating the interest of the female students it is not can they the question is not can they play d1 it's do they have the ability to play and the potential to become of our city team plaintiffs would point this court to the decision in peterson versus louisiana state university out of the fifth circuit where they this was the exact issue at question and the court said that you know the heart of the contention was that an institute a team with no coach no facilities no scholarships no recruitment no support whatsoever from the university um should have a a national caliber enough national caliber athletes to field of varsity team and went on to say that not only would that effectively eliminate any any claim by any plaintiff that under prong three but it's an unrealistic standard and it's a weird match-up yes it's right but but i mean it seemed to me that we have case law that says you have to look at the existing student body yes they're absolutely and we have demonstrated there is interest in ability both among the existing student body to field of varsity team and as such we would hope that in order to get into compliance the university would add women's teams but again that's a remedies question we've we plaintiffs have established liability the district court simply misunderstood and misapplied the the law as to what counts as a matter of law so um miss bullock thank you we've made you stay late uh but uh gave you a chance to answer our questions which we always appreciate you'll get your full rebuttal and we'll hear from the state thank you very much your honors good morning good morning may it please the court miss bullock my name is brian bowman and i represent the university of kentucky in this matter regardless of whether this court applies an equal protection analysis or the discredited three-part test the university complies with title nine excuse me and the judgment of the district court should be affirmed can i ask at the outset let's let's say you're right about the guidance and maybe effectively you're challenging the rule which is being interpreted what would you say the test is for title nine like how does it work and it is a good point that title nine was enacted against a backdrop of segregated sports or a lot of not exclusively segregated sports but a lot of segregated sports so what is what would be this the standard the test would be much like it would be under title six which we would follow an equal protection i can't possibly be the case because you want to allow racial segregated sports under title six no as to whether sports the test here is when we are creating opportunity or providing opportunities for female athletes and male student athletes or whether we're analyzing the creation of a new sport are we treating men and women differently when we go through the analysis of which sports to consider adding are we applying the same analysis to men that we did to women part of why i think there's so that's what's so tricky they congress adopted the same exact language for title six and i think we would all agree that race segregated sports would violate title six so why can the same language allow for sex segregation but not allow for racial segregation is it just the history point the backdrop in title six is consistent with equal protection so it's that same analysis as to why you have the statute which you're answering the easy part go to the hard so the question the statute specifically carved out certain things based on the why didn't they carve out sports they carved they did not carve out sports title nine does not have an exception but it does carve out it's allow for living facilities to be segregated and and other things things like father-son activities mother-daughter activities there are certain things that congress of the statute and and i think it's important to consider too the suspending clause legislation which must be clear and must be unambiguous in order for it to be enforceable i think in part that's why in alexander v sandoval there's not a cause of action for violation of regulations that are issued under title six there likewise should not be a cause of action here for regulations issued under title nine when we follow the equal protection clause analysis it brings us back to i had well just i just on that but maybe you're going to ask this but what is the cause of action here is it under the rule is it under the statute is it under the guidance the plaintiff's complaint in a minute complaint in this lawsuit made an equal protection claim for sex discrimination and made a title nine claim how did it's what what was it relying on the rule the guidance or just the statute it was relying on it was clearly relying on the guidance and i think where where the case law has morphed over the years and i get it in this immediate post chevron world is a different world than we live in now post kaiser and post loper bright but what happened at the time was you had the guidance and the guidance somehow got twisted into a cause of action the guidance clearly is to be a safe harbor and so what the guidance if it's going to be applicable at all the guidance should be a defense for funding recipients to use the plaintiff should have to prove intentional discrimination intentional differential treatment because of sex help me out i mean i can go look at the complaint and and you should stop this line of inquiry if it's if it's a waste of our time but i guess i'm going to be surprised if i look at the complaint and it says this cause of action is premised on your failure to satisfy the safe harbor in the first prong of the guidance i doubt that's how they framed it the guidance is in there that's how this case has been litigated that is how they framed the cause of action yes it failure to meet a safe harbor that's didn't make any sense that's and i think well here's here's why i think this is a unique case um my colleague referred to the the lsu case versus peterson i may be wrong but to my knowledge there are only two one prior opinion in this suit that i've seen seeking to compel a university to add a new sport almost all the other cases that we read are where universities have eliminated one or more sports and so the claim then becomes you can't eliminate a sport because you're not in substantial proportionality or it's going to be hard to make a prong three analysis that there is not interest and ability among your existing student body if you have an existing team it's kind of hard to win on prong three and so it always go back goes back to substantial proportionality so i think that's why the opinions over the years have focused on that this kid this court in in ballo in michigan state uh interestingly it addressed the guidance and here's here's one more point why i think um deference is is not is not proper here the original three-part test comes out in 1979 and it talks about substantial proportionality but it doesn't really define it in any terms which is its own problem in terms of a spending clause uh legislation for title nine but what the 1996 new opinion letter says from ocr is well we're going to tie substantial proportionality to an average team on your campus and then in the michigan state case michigan state did not challenge the three-part test and they had won at the trial court level this court then in ballo says we're not going to follow the 1996 reinterpretation of the original 1979 interpretation instead of going back an average team on your campus we're going to say any average team what um so what is the basis of your challenge so a kaiser challenge is the suggestion that the guidance is inconsistent with the reg and a loper bright challenge would be that the reg is inconsistent with the statute which one of those are you making or both or what thank you under either one we end up with the same okay i believe it should be loper bright now so you are saying that the reg the cfr violates the title the language of title nine to be clear our position is that the three-part test violates both the two-part test is not in the reg it's in the it's not in the rig correct but it violates the language of the statute and it also violates the language of regulation okay but please try to answer the question okay so just i'm not i just want to make sure because this is really important to what we're supposed to do you're the one challenging this you don't have to challenge this you could just say let's talk about judge caldwell's decision on part three instead you've written a brief that says this is all inappropriate and we have to figure out what you mean by all so the rule says shall provide federal receive federal bennett's quote shall provide equal athletic opportunity for members of both sexes now why is that rule violate loper bright loper bright requires the court to we we got loper bright tell us why that's incompatible with the statute because it drives everything toward a quota shall provide equal athletic opportunity for members of both static if if what title nine means is just no intentional discrimination right that's what you're saying why i mean i don't think it has to mean disparate impact are you saying are you saying that's what it does it can't be because disparate impact is not actionable under title nine just like it's not actionable under title six so if that's true why isn't it fair to just reach i'll provide equal athletic opportunity for members of both sexes to mean no intentional discrimination that can be but that's not what if it does if it does that um solves the loper right problem not when the three-part test because no no that's a kaiser problem that's what judge murphy is trying to get you focused on where do you want us to look here and i'm just trying to and here's what here's why i think it and i'm sorry to muddy it for the court but here's why i think it does get cloudy when the agency's interpretation rises to the level of a cause of then kaiser morphs into loper bright and that's why i say i think we reach the same the same outcome whether it's kaiser or whether it's loper bright and what loper bright i think made maybe made clearer than kaiser is we're not going to defer just because we have a history of deferring it's a brand new analysis why don't we what what would be the problem with the suggestion that the guidance itself is problematic under kaiser because we interpret the regulation of as the way chief judge sutton just suggested that it requires intentional discrimination and the three-part policy statement does not require intentional discrimination that is absolutely correct your honor and i'm sorry i didn't articulate it that succinctly so then it would not be invalidating the reg it would be interpreting the reg and the reg to make the to ensure the reg's validity with the statute the reg itself requires intentional discrimination the policy statement does not therefore the policy statement is not an appropriate interpretation that is correct that is absolutely i'm sorry that i don't know this does title nine have an express cause of action no it's an implied cause of action that's what the supreme court but what's there is a canon that says okay so canon says implied rights of action are fine under title nine correct so we have to accept that alexander versus sandoval doesn't help us there is canon an implied right of action to enforce the statute or a reg statute and and and the next best case for that is jackson versus birmingham schools which were the supreme court following alexander and and relying a lot on alexander talks about retaliation and that's where the supreme court found that a cause of action existed under title nine for retaliation even though retaliation is not enumerated within that statute but it did so and and my count may be wrong i don't think it is more than 20 times in the majority opinion in jackson the court says intentional discrimination that retaliation is a form of intentional discrimination and what the three-part test has done is completely moved away from any element of intentionality and it's just do your numbers can i ask you about that so the hypo the hypo i asked your friend on the other side if if um if an athletic director intentionally eliminated a team in order to achieve prong one's perfect proportionality um is it your view given do you adopt an intentional discrimination view of title nine that that itself would violate title nine because you're intentionally discriminating against the players who are no longer have the team i think it certainly is an equal protection clause problem and what some courts have said including the miami case here is trying to comply with title nine is not an equal protection clause violation and i think it's difficult to do that but that came at a time where this court was following three-part test and that's one of the flaws in the three-part test is it pushes toward having your i think your answer when you said it would violate the equal protection clause since you interpret the equal protection clause to be compatible with title nine it would also violate title nine that absolutely it should be so title nine should not be construed differently because what we're saying is and and that's you know the remedy in this case could have been add more female opportunities add more female sports or in the universe no one wants to do this or eliminate more men in other words as the female enrollment female undergraduate full-time undergraduate enrollment rises we have to eliminate men's sports in order to meet that percentage to stay within substantial proportionality to that percentage and so that is a major fall can i ask you i i understand that you don't like this guidance although it arguably could give some schools just an easy out if they do have proportionality it doesn't actually overall require it if we're going to say okay this guidance doesn't comply with the reg interpreting the the reg consistently with the words of the statute we are as your friend on the other side pointed out like in a little bit of a different world because we have sex segregated sports right so would it make sense for there to be any guidance about how to evaluate what discrimination on the basis of sex means in this context like if you have a school that has you know we can go the other way 20 female sports teams right and like two male teams right and a bunch of the men on campus come together and say hey why can't we have a lacrosse team we're really good at it you know all of these types of things and um you know the the school doesn't you know have anything against men maybe it just doesn't want to spend the money maybe it you know doesn't like lacrosse i i don't know but like you know how do we evaluate whether there is discrimination as as you would see it under the the statute and and are we then okay with i mean it's one thing to try and change the test right now after title nine has made all this progress right but in in having men and women's sports at schools but if we're think to think about a test that should exist when title nine comes into being which is what i understand your argument to be like these are the words of title nine and this guidance has been wrong since 1979 like how do we how do we understand what this what this actually means if it's if it's not the guidance well so the first part of your question your honor was is there anything wrong with them providing guidance and and and the flaw here is that the guidance has now become part of the cause of action under title nine so could there be guidance perhaps but it's not enforced even if this isn't even if we don't buy your cause of action argument right like the first you know sentence of the district court's opinion is that the argument is that the defendant university of kentucky has violated title nine right not violated the reg not violated prong three of the whatever it's violated title nine so and you know maybe i'll go back and look at the complaint i don't remember but my guess is it says title nine somewhere um in in the cause of action section so apart from the cause of action section like if the cause of action is articulated how you would have it like title nine is violated like all that kind of stuff how would you know a court a school which i'm sure would like to know what it should do to to not be held liable like what are the metrics of figuring out how there is or isn't discrimination what is intentional discrimination in a context where you have already segregated and there and there is i think prior i don't want to say the word guidance but there are prior court opinions that that you can look to on that one there has to be that element of intent and to be clear the complaint here alleged that from the beginning that there was some intentional exclusion of adding women's sports because they also included the equal protection clause claim in this so it was going down both paths this court in horner the second time it had horner horner originally from kentucky high school sports about adding girls fast pitch softball as a sanctioned sport within high school as it went back as it came back to this court after the lower court had addressed the viability of the title nine and issued summary judgment this court says there must be an element of intentionality that's in every other title nine case whether it's about adding not about adding sports the lsu case talks about intentionality it could be proven through so would you what is the kentucky policy so could women try out for the football team i don't know that anyone has asked i can say i do know anecdotally vanderbilt had a female kicker a few years ago but that's that's the key point because you you will you would be engaging in intentional discrimination if you say you if only men can try out for the men's sports and only women can try out for the women's sports so what do you mean by intent there then well it's not about so we're talking of adding a new sport in other words dead and that's another flaw in three prong test he's trying if the i just want to make sure you understand i'm thinking about the same thing he's trying to go to this title six analogy right we all agree you can't have race segregated sports that's just colorblind he's trying to figure out how do we apply that principle to gender and i think it's a pretty hard question so one possibility is this is intentional discrimination but it satisfies six scrutiny because of the history of you know men's and women's sports and they have co-ed sports when that's appropriate and they don't when they don't of course that ain't a picnic for you all because that means strict scrutiny is applied to every choice right that that makes the guidance look pretty good frankly if if you're an athletic director do you really want strict scrutiny over every choice over every men's and women's sports team so i'm what i'm at i'm curious about and i think what judge murphy's asking is how is this going to work you're the one that wants to get rid of the guidance and the rule you're saying equal protection applies how does that work in a world in which we have a tradition of lots of sex segregated sports and and to a lot of that the university this university like most division one universities are going to abide by what the ncaa regulations are and those control some sports which are co-ed and some sports which are not there are men's basketball and there are women's basketball and so this university is going to be subject to whatever the rules of competition are by the controlling governing body which is going to be the ncaa so there's not going to be any room there to address that you had asked the question about football or i just anecdotally know so sec you could say intent discrimination is separate separate but equal right so for every men's team you have to an analogous women's team but the problem with that is there are some sports that don't have equivalent so for men it would be football i think for women it might be gymnastics at kentucky but um what is that what is that should that be the test that you for every men's team you have to have a woman's team no no and that is not there is not that balance where you have to have like the university has women's volleyball it does not have men's volleyball many sports of course there are let's let's make let's give you a chance to respond um to your friend's arguments about prong three and how judge caldwell handled it why don't we just thank you a couple responses thank you thank you judge sutton and and it is a finding of fact that the judge made i think three important points to address there what just caldwell said was the plaintiff's proof was based alone on the survey and we can look through the numbers and we talk about who was recruited and what the actual skills were and what those numbers came to those did not establish a viable team on survey alone those numbers were not sufficient but what judge codwell also said was it's not based on the survey alone there was no other proof presented at trial that would have shown what the actual ability was the mere fact that a number of of of women answering the survey self-identified an interest and self-proclaimed inability does not mean that a university or as she said or the court can determine there is the actual ability what the proof at trial did establish was that on the equestrian front the senior women's administrator at the time miss bell met with the equestrian coach met with the equestrian faculty advisor met with the at that time the equestrian club president all of whom said there are not enough the coach said you may have three members of the hunt sink hunt seat team which could compete at the division one level miss bullock made it sound like there were a bunch of folks that won the national championship and this is after all central kentucky so uh who's right about this uh so the i believe what she was referring to was the most recent national champion not the university of kentucky winning the most recent national when the uk club team won the club national championship the most recent one was an individual i think she was making the point that it only had 15 people so she's asking why do we have to meet the 40 threshold when people are winning on 15 and i actually have to say i'm confused this is maybe beyond the briefing but when we're talking about 40 are we talking about hunting western together are we talking about you need 40 for hunt i know this came up in the in the trial and and and and how you actually are calculating the numbers and and the abilities like for western you don't need to jump but you're asking everybody if they can jump right and there are different skill sets different disciplines yeah like uh i believe the the witness at trial who was the current equestrian club president compared it like track and field as track and field events yeah and those things so yeah the that was focused on the hunt seat side of things your question you need 40 people to field a hunt seat team that's what the testimony was at trial okay even though this other team did it with 15 in that it that yes and that came from the ncaa that they publish an annual review that goes back over the years uh that was all introduced or at least portions of it if it wasn't introduced it was at least read at trial as to what those numbers were for the average team and equestrian lacrosse field hockey excuse me but the testimony that the judge did have a trial where she made a factual finding on was that the plaintiff's only evidence was the survey results which were self-selected miss murray who testified uh who was at that time clearly an accomplished equestrian did not identify a number of others she said there would be some but none of those other testify miss bell did investigate this and as i mentioned spoke to the coach coach and she said maybe three so they've done this analysis and that was what the proof that judge caldwell had at trial when she issued her factual finding that they did not that the plaintiffs did not prove actual ability to how about the anonymity point given that kentucky makes it anonymous so what why are you allowed to rely on that one small correction it's actually confidential it's not anonymous okay uh you can find the people you said in your the survey folks do and and if i can highlight the last question so as a person who's filling out the survey you check interest of your sport you then get questions about recruiting at that sport you then get the objective questions and then you get this last question this is going to be trial exhibit 78 page 70 of trial exhibit 78 the question asked to the student you have indicated interest potential ability and a willingness to abide by varsity athletic athlete requirements for one or more sports and here's the key question that they answer would you like the uk athletics department to consider your information yes no or choose not to answer so they are told you've given this information you've identified an interest you have identified potential ability would you like athletics department to consider your information and if they check no they don't help me with consider does that mean does that include call you it could include call you yes or it could include analyze it and rely on it and so if you check yes you don't insert your contact information if you check if you select yes the survey says if you select yes your name your uk email address and your answers will be shared with uk athletics department after the survey closes the rest of your survey response will remain confidential so if you check yes the information is going to athletics including your contact information if you check no it's not and so that's why it's important and that's why judge caldwell focused on that because it's interesting i think we i think we thank the court go ahead yeah go ahead one other question i and i asked this of your friend like what even if we agree with judge caldwell that under this test it's not met you didn't have to set up a team like what is kentucky's obligation now at all seeing interest seeing ability like does this just stop here it seems like you do this survey every year can it can what what i mean and maybe you don't think the law requires you to do anything at all if this guidance is is um not kosher but um but i'm curious what kind of the state of the world is and the answer to that is the university will continue to do what it's been doing for the last decade it has a sports review committee that meets annually it meets after the survey responses are compiled by the data analysis there is a senior women's administrator it's no longer miss bell it's it's rachel baker she's involved with that she attends swa meetings both within the sec and nationally uh miss bell who is overseeing the title nine uh compliance continues to monitor there is i would see that there was this interest potentially some ability and continue to ask about it and and think about it absolutely and is this the survey you continue to use yes your honor is this a survey for men and women or is it yes everyone gets it everyone so so that's why you're judging ability like to be on the lacrosse team to say you're able you've got to run under a five minute mile because that metric might be different for men as for women look at and you look at basketball and you look at volleyball and you look at wrestling wrestling hold on hold on go go back to where i am you think it makes sense to judge ability for a lacrosse team under prong three by asking women who want to play lacrosse whether they can run under a five minute mile so those answers were not drafted uh let me correct that a second if the university has a sport on there those criteria were provided by the coaching staff of an existing sport if the sport was not offered by the university of kentucky the questions were obtained from the national governing body so then that but you just told me that you don't gender segregate your questions so you're but if you're but if we're supposed to evaluate and i'm probably asking you questions that aren't are necessarily ones argued so you just have to indulge me for a second but if if if the idea under prog three at least as it exists is to judge interest in ability and you know you have a lot of evidence in the record that the the women who have responded don't have the ability vis-a-vis the survey doesn't it matter if the survey questions are targeted towards you know women women's physical ability as opposed to men's and let me let me correct that it's the same survey but not every student gets the same question so women would get different questions if they select a specific is the one that i have which is is your your uk 004089 that asks women to play lacrosse if they can run under a five minute mile right and some questions will be the same and some questions may be different because it came from the government all horrified by the five minute mile it doesn't matter whether it's it came from the governing but maybe it's just an arbitrary metric generally i mean as somebody who was a track recruit i can tell you that's interesting um but i'll i'll i'll let you i'll let you off the hook on that one all right thank you for your time all right thanks so much all right miss bullock you've got your full rebuttal here all right thank you your honor i i want to start out by answering a question that you had judge bloom cats um the nat ncaa average size of 40 women in a equestrian team is hunt and western together okay yes so um that is part of the record the ncaa collects information from member schools every year reports the average size of the teams how many teams there are that is a hunt and western together does the district court opinion say that judge caldwell say that what you just said i'm not disagreeing with you i'm just curious if she found that i i will be honest with you i am unsure we'll figure explicitly says that um but that that's what the evidence itself indicates but the survey also doesn't really i mean it distinguishes kind of inability because it asks about jumping but like if you're asking like were you a recruit you you could answer yes whether you were recruit for western or for hunt correct okay the university itself has the discretion every university does to decide if they're going to sponsor a combined hunt and western team or just western or just hunt seat there's nothing in the ncaa or national governing rules that require them to have both disciplines within the sport of a question there are club teams for both so when the coach testified that we really don't have that many people who can have the d1 ability was that as to hunt as to western as to both for in the equestrian category not lacrosse and field hockey that was as to hunt but it's important to remember and the district court did recognize this that the club equestrian team is comprised very differently than a varsity equestrian team would be a varsity equestrian team everyone who participated would be at you know at or developing to the varsity level because even on the men's side we have students who come who are not quite ready to play yet they don't get any field time in their sport their freshman year and then they develop but in club equestrian they are required to have a very limited number of experienced writers a much larger number of novice writers so if we're talking about who is actually on the team there might not be as many but we did have testimony that clearly stated that there are a lot of women who are division one caliber who don't make the team because of those artificial limits that are in place for the club rules so that the women on the club team are not the only women who are interested in have the ability on campus i want to address a little bit the the argument that title nine is like equal protection first the supreme court and fitzgerald very clearly said that title nine and the equal protection are not coextensive that title nine in some ways goes further than the equal protection clause and in some ways provides less than the equal protection said that on the substance or on what i will call called like procedural issues so it said that with respect to title nine applies to private entities whereas equal protection would apply to public that doesn't necessarily mean that the standard is different between title nine and equal protection in in the fitzgerald opinion your honor respectfully it it does have the standard it does discuss that it goes the protections go further in some regard under title nine and are lesser in some regard because but that's what i meant that they're further because they protect against private party private university so you were saying that it actually said this with respect to the substance of standards of violations in in in particular in talking about that they are lesser it it explicitly discussed that because it allows yes it allows segregation and equal protection does not allow segregation as judge murphy greatly go on to explain why because um uh strict scrutiny satisfied or intermediate scrutiny status satisfied or did it go on to explain why the fitzgerald court does not go on to explain why um i think there are very valid reasons very valid biological very valid um you know just practical reasons to have men's and women's sports title nine was enacted for the purpose of growing women's sports there continued to be and still you know based on university of kentucky's arguments today the presumption that women are just less interested in sports all of that kind of could incorporate equal protection rules which are a little different for women so i mean because the language if you look at the language it it's not obvious to me it's doing something different from the constitutional standard and i'm not sure why that's bad but maybe it is bad i one example i can think of your honor uh is if we're if the standard resorts to true equal protection and we can no longer have sex segregated sports i don't know where that leaves women with an opportunity to play um and and we would not be advocating for that at all making the point that gender discrimination has always had some different features from race discrimination just has so title nine incorporating equal protection clause doesn't necessarily mean you can't have sex segregate sports that's what i'm trying to suss out i think it would leave us in a very interesting situation so for example here university of kentucky is claiming it shouldn't have to add these sports because they don't have the ability to play at the division one varsity level and therefore they're not intentionally discriminating against them by not accommodating the interest in the sport but if we define ability to play at the division one level as anything that includes winning at the division one level being successful then is every year you know if if pure equal protection would every year every university need to assess all of its teams figured out who won who lost every single game and then if there were women who were or men who were asking to be added and there were a team of the over-represented gender that hadn't won anything did they need to be eliminated because they haven't shown that they have the ability to play at the division one level each year seems like a argument about the third prong doesn't really seem to be engaging with the constitutional point but but anyway that's a big big topic and you know probably reason for caution here i think here you know the the horner court did a full analysis and defendants have moved forward with a challenge explicitly under loper bright not under kaiser they did not preserve that argument in their briefs and it it is possible for the court to make a much more narrow finding that the district court judge misinterpreted the looking to the second circuit the fifth circuit there's also two cases out of the ninth circuit mansourian and brust when assessing ability it anonymous ability is the same it's on campus those women do exist thanks to both of you for your helpful oral arguments for answering our questions and for your helpful briefs we really appreciate it very interesting case thank you very much so we can deal with it so thanks very much the case will be submitted